No. 137 February 26, 2025 183

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. S.,
*Appellant.*

Linn County Circuit Court
23JU00234; A184548

Heidi M. Sternhagen, Judge pro tempore.

Argued and submitted January 10, 2025.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Vacated and remanded.

**POWERS, J.**

In this juvenile dependency case, mother appeals from a permanency judgment that changed the plan from reunification to adoption. In a single assignment of error, mother contends that the juvenile court erred by not including in writing all of the determinations required by ORS 419B.476(5). On appeal, both parties agree that it is well settled that ORS 419B.476(5) and our cases interpreting that statute require written findings. *See, e.g.*, *Dept. of Human Services v. L. B.*, 246 Or App 169, 175, 265 P3d 42 (2011) (concluding that the "matter is of such import that the legislature has required not only that the findings be made, but that they be expressly included in the court's written order"). The Department of Human Services (DHS), however, contends that the juvenile court's incorporation of its oral findings in the judgment sufficiently complies with the requirement for written findings. As explained below, we disagree with DHS's assertion. Accordingly, we vacate and remand.

The relevant underlying procedural and factual history is both undisputed and relatively brief. In 2019, DHS removed child, A, from mother's care and placed A with the current resource family because of mother's substance abuse. Child was returned to mother's care in early 2020, and the resource parents acted as "co-parents" with mother. In 2023, child was again removed from mother's care after mother relapsed by using methamphetamine and abusing alcohol. At the time of the permanency hearing, mother was incarcerated after being convicted for burglary and driving under the influence of intoxicants.

After the permanency hearing, the juvenile court made a number of oral and written findings. For example, the court found that mother has had an "extremely difficult time remaining clean and sober while she's not in custody" and that she has been "a long time either alcohol and drug user." The court further found that mother's abuse of alcohol causes her to "spiral[] downhill," such that she engages in behaviors that negatively impact child such as missing therapy appointments and failing to follow through with

recommended treatment plans. The court's written judgment, however, did not include all of the required findings.

Under ORS 419B.476(5), a juvenile court must enter an order within 20 days after a permanency hearing. If a juvenile court determines that the permanency plan should be adoption, then ORS 419B.476(5)(d) requires the court's order to include "the court's determination of whether one of the circumstances in ORS 419B.498(2) is applicable." Mother argues on appeal—and DHS concedes—that the court's written judgment did not include that required determination about whether one of the circumstances in ORS 419B.498(2) was applicable.[1] As illustrated by the excerpt below, the court did not check the box in the form judgment associated with the required ORS 419B.498(2) determinations:

---

[1] ORS 419B.498 provides, in part:

"(2) The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"(a) The child or ward is being cared for by a relative and that placement is intended to be permanent;

"(b) There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A) The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476(5)(c);

"(B) Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships;

"(C) If the child is an Indian child, the court finds that tribal customary adoption, as described in ORS 419B.656, is an appropriate permanent plan for the child and the Indian child's tribe consents to the tribal customary adoption; or

"(D) The court or local citizen review board in a prior hearing or review determined that while the case plan was to reunify the family the department did not make reasonable efforts or, if the child or ward is an Indian child, active efforts, as described in ORS 419B.645, to make it possible for the child or ward to safely return home; or

"(c) The department has not provided to the family of the child or ward, consistent with the time period in the case plan, such services as the department deems necessary for the child or ward to safely return home, if reasonable efforts to make it possible for the child or ward to safely return home are required to be made with respect to the child or ward."

☐ **ADOPTION.** Pursuant to ORS 419B.498(2), the court finds:

(a) The child is not being cared for by a relative in a placement (other than adoption) that is intended to be permanent;

(b) Termination of parental rights is in the child's best interest (no "compelling reason" to the contrary) because:

- The parent is not participating in services that will make it possible for the child to safely return home within a reasonable time.
- No other permanent plan is better suited to meet the health and safety needs of the child, including the need to preserve the child's sibling attachments and relationships.
- ODHS provided reasonable efforts to make it possible for the child to safely return home, or, if the court or CRB made a prior finding that ODHS did not make reasonable efforts for the child to safely return home, sufficient efforts have been provided since the negative finding.
- ODHS has provided the services it deems necessary for the child to safely return home consistent with the time period in the case plan.

Additional findings:

☒ This Court determines the permanency plan will be ADOPTION.
☒ The termination of parental rights petition must be filed not later than:  July 1, 2024

DHS contends, however, that we should nevertheless affirm the permanency judgment because it expressly provides that the court "incorporates and adopts by this reference the oral findings made by the court at the conclusion of the permanency hearing."[2] Attempting to distinguish *L. B.* and relying on cases such as *Dept. of Human Services v. A. H.*, 317 Or App 697, 505 P3d 1064 (2022), DHS asserts that the incorporation of the oral findings by reference satisfies the ORS 475B.476(5)(d) requirement. We disagree with DHS's assertion.

First, *A. H.* is distinguishable because, in that case, the mother's challenge to the form of the judgments was unpreserved, and we had to determine whether her claim met the standards for plain-error review. 317 Or App at 704-06. Because the mother had 10 days to review and object to the permanency judgments before they were entered, we concluded that she was required to preserve her claim, which she did not do. *Id.* at 706. Here, as DHS's argument recognizes, preservation is excused because mother did not have an opportunity to review and object to the judgment before it was signed and entered. In that circumstance,

_____

[2] DHS does not argue that the boxes checked under the "Additional findings" section bear on whether the juvenile court made the required written findings; rather, we understand its argument to be focused on incorporating the court's oral findings into the permanency judgment.

preservation is excused given that she had no practical ability to raise a challenge to the juvenile court's findings. *See, e.g.*, *Dept. of Human Services v. H. P.*, 252 Or App 346, 351, 287 P3d 1175 (2012) (excusing preservation because the parent did not have a "practical opportunity" to object at the hearing because the permanency judgment was not entered until after the hearing). Thus, because preservation is excused in this case, our conclusions in a plain-error posture like *A. H.* provide no support for DHS's contention that oral findings incorporated by reference satisfy the statutory requirements.

Second, this is not the type of case where the juvenile court incorporated into the judgment other written documents as part of its findings. *See, e.g.*, *Dept. of Human Services v. H. R.*, 241 Or App 370, 374-75, 250 P3d 427 (2011) (concluding that a permanency judgment adopting an unattached DHS court report as its written findings was sufficient to comply with ORS 419B.476(5)(a)). In that case, the written report had been admitted as an exhibit at the permanency hearing, was contained in the trial court file, and the judgment specified the date of the written report such that there was no ambiguity about which report the court adopted as its written findings. *Compare id.* at 373-75, *with Dept. of Human Services v. S. E. D.*, 337 Or App 448, 454, ___ P3d ___ (2025) (noting that, where the record contained "more than one Family Report," the judgment did not specify "which Family Report was being adopted by reference").

Finally, if we were to adopt DHS's position that a juvenile court could merely incorporate its oral findings by reference in the written judgment, that approach would open the door to eviscerating the requirement for written findings altogether. We decline to proceed down that potentially slippery slope. As we explained in *L. B.*, "the legislature has manifested its intent that a juvenile court expressly connect all of the dots along the way to a change in the permanency plan." 246 Or App at 175. A permanency judgment that does not provide "all of the dots" in writing—and instead requires someone to hunt and peck around audio recordings to gain a full understanding of the court's decision—undercuts the long line of cases that have required explicit written

findings. *See, e.g., Dept. of Human Services v. R. A. H.*, 299 Or App 215, 217, 447 P3d 87 (2019) (reversing and remanding after accepting DHS's concession that the judgments lacked a description of DHS's efforts required by ORS 419B.476(5)(a)); *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 183-84, 205 P3d 36 (2009) (concluding that, by requiring that the juvenile court make findings, "the legislature has expressed its intent that the trial court carefully evaluate DHS's decision to change a permanency plan for a child in order to ensure that the decision is one that is most likely to lead to a positive outcome for the child"); *L. B.*, 246 Or App at 175 (explaining that the findings required by ORS 419B.476(5) "demand[] more than inferences from a permanency judgment").

In short, we agree with mother's argument that the permanency judgment failed to include all the statutorily required determinations.[3]

Vacated and remanded.

---

[3] Although the parties on appeal dispute whether the juvenile court's oral findings were sufficient, we need not address that issue because the parties will have an opportunity to raise their respective contentions about the legal sufficiency of the findings on remand.